UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DEITRICK BERNARD GRAY, | No. CV 15-795-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 4, 2015, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on March 18, 2015. The parties filed a Joint Stipulation on October 29, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

/

## II.

## **BACKGROUND**

Plaintiff was born on January 16, 1973. [Administrative Record ("AR") at 17, 182.] He has past relevant work experience as a handyman, supermarket stocker, and mail sorter. [AR at 16, 25-29.]

On May 1, 2012,[1] plaintiff protectively filed an application for a period of disability and DIB, alleging that he has been unable to work since July 1, 2011.[2] [AR at 10, 182-84.] After his application was denied initially and upon reconsideration the same day,[3] plaintiff timely filed a request for a hearing before an ALJ. [AR at 10, 69-71.] A hearing was held on December 19, 2012,[4] and again on August 6, 2013, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 22-45.] On September 18, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from July 1, 2011, the alleged onset date, through September 18, 2013, the date of the decision. [AR at 10-17.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 164-65.] When the Appeals Council denied plaintiff's request for review on December 8, 2014 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

---

[1] Plaintiff had filed previous applications for DIB and for Supplemental Security Income payments on May 3, 2011, which were denied on August 1, 2011. [Joint Stipulation ("JS") at 1 n.1; AR at 255.] Plaintiff asked the Administrative Law Judge ("ALJ") to reopen those applications. [AR at 10, 255-58.] The ALJ denied plaintiff's request as moot, "as the medical evidence of record fails to show the claimant has been under a disability for the relevant period." [AR at 10.] Plaintiff did not challenge this finding to the Appeals Council [see AR at 259-62] or in the Joint Stipulation.

[2] Although plaintiff alleged in the application an onset date of June 1, 2008 [AR at 175], he amended that date at the hearing to July 2011 to be "commensurate with his medical records." [AR at 44.]

[3] Plaintiff explained that this case is a "prototype case, which skips the Reconsideration level of appeal." [JS at 1 n.2 (citing AR at 63).]

[4] The December 19, 2012, hearing was continued to allow plaintiff time to hire a representative. [AR at 48-53.]

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

4

July 1, 2011, the alleged onset date.[5] [AR at 12.] At step two, the ALJ concluded that plaintiff has the severe impairments of lumbar spondylolisthesis and bilateral hip impingement. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 13.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[6] to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).[7] [Id.] At step four, based on plaintiff's RFC, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as a handyman, supermarket stocker, or mail sorter. [AR at 16.] At step five, based on plaintiff's age, education, work experience, and RFC, the ALJ found that the Medical-Vocational Guidelines, 20 C.F.R. part 404, subpart P, appendix 2, directed a conclusion of not disabled. [AR at 17.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of July 1, 2011, through September 18, 2013, the date of the decision. [Id.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) failed to fully and fairly develop the evidence; (2) rejected plaintiff's subjective symptom testimony; (3) failed to properly determine plaintiff's RFC; and (4) found that plaintiff can perform other work. [JS at 2.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further

---

[5] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. [AR at 21.]

[6] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

1 proceedings.

### A. DUTY TO DEVELOP THE RECORD

On July 6, 2011, the consultative orthopedic examiner, H. Harlan Bleecker, M.D., conducted a complete orthopedic evaluation of plaintiff. [AR at 264-67.] Dr. Bleecker found that the range of motion of plaintiff's neck, back, sitting and supine straight-leg raising, elbows, wrists, and fingers were all within normal limits, as were plaintiff's flexion, abduction, and adduction of his right and left lower extremities. [AR at 265.] He found reduced external and internal rotation of the left lower extremity, and noted "sustained clonus in the right lower extremity; none on the left," and stated that plaintiff's Babinski reflex "is questionable on the right, and down on the left." [AR at 266.] Dr. Bleecker diagnosed (1) L5-S1 spondylolisthesis based on x-rays of the lumbar spine; and (2) "[q]uestionable central nervous system pathology, site perhaps in the brain or in the upper cervical spine . . . sustained clonus in the right lower extremity, but questionable Babinski on the right, hyperactive reflexes on the right." [AR at 267.] He concluded that orthopedically, plaintiff "can sit, stand and walk 6 out of 8 hours, lift 20 pounds occasionally and 10 pounds frequently," and had no restrictions to his upper or lower extremities. [Id.] However, Dr. Bleecker also stated that plaintiff "should have a neurologic evaluation to make a more valid determination of his functional capacity." [Id.]

The ALJ gave "greater probative weight" to Dr. Bleecker's opinion than to the opinions of plaintiff's two chiropractors.[8] [AR at 16.] He found that although Dr. Bleecker was not a treating physician, he is "both medically trained and familiar with the disability program"; he had an opportunity to observe and examine plaintiff in the clinical context; and his opinion was "well supported by the medical findings, particularly the relatively mild imaging studies." [Id.] Although Dr. Bleecker opined plaintiff was capable of light work, the ALJ nevertheless gave plaintiff "the considerable benefit of the doubt" when he found him capable of performing the full range of

---

[8] The ALJ also gave "some weight" to the opinions of the non-examining consulting physicians who, like Dr. Bleecker, found plaintiff capable of light work with limitations "to frequent and occasional postural maneuvers." [AR at 16.]

6

sedentary work. [Id.]

Based on Dr. Bleecker's recommendation for a neurological evaluation, in a brief submitted to the ALJ and by oral motion at the hearing, plaintiff requested that the ALJ order additional neurological testing, which the ALJ denied without explanation:

> ATTY: . . . I would reiterate my request to have a neurological CE ordered, as the orthopedic CE said that would be necessary, or that should be recommended to get done, so that [plaintiff] can have a more thorough evaluation and assessment.
>
> ALJ: Yeah, I remember the request; I'm not going to grant it.
>
> ATTY: The -- he said that -- I mean, he's basically saying that his own assessment is not valid.
>
> ALJ: Okay, anything else?

[AR at 44; see also AR at 256.] In his decision, the ALJ stated that the request for a neurological consultation was denied because he had determined that there was "sufficient evidence to make a determination in the instant matter." [AR at 10.]

Plaintiff contends that despite Dr. Bleecker's statement that his "functional capacity assessment [of plaintiff] is not valid or [is] equivocal, at best," the ALJ inexplicably gave great weight to Dr. Bleecker's assessment. [JS at 3 (citing AR at 16).] Plaintiff further contends that Dr. Bleecker's recommendation, along with the ALJ's finding that the diagnosis of radiculopathy was unsubstantiated by the objective medical records despite records showing signs of impingement of the hip, and the ALJ's finding that plaintiff's use of a cane was "questionable," "rather than not supported" by the record, resulted in ambiguity in the record and/or an explicit finding that the record was inadequate, thereby triggering the need to further develop the record and order the neurological evaluation suggested by the orthopedic consultative physician. [Id. (citing AR at 14, 16, 44-45, 273).]

Defendant counters that it is the ALJ's duty to develop the record, "not create one." [Id.] Defendant notes that plaintiff did not attempt to supplement the record with any medical records that support a finding of neurological pathology, or to controvert the ALJ's RFC assessment. [JS

7

at 4.] Given the Commissioner's broad latitude in ordering a consultative examination, defendant argues that the ALJ was not required "to order yet another consultative examination based on [Dr. Bleecker's] speculative comment." [Id.] Finally, defendant notes that the duty to develop the record is only triggered where there is "ambiguity about a documented, diagnosed illness during the relevant period," and here there was no ambiguity about documented illness, only speculation about the possibility of a nervous system disorder. [Id. (citing Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001), Mayes, 276 F.3d at 460).]

In response, plaintiff notes that a claimant "need only 'raise a suspicion' about his impairment in order to trigger the ALJ's duty to develop the record." [JS at 4-5 (citing Hilliard v. Barnhart, 442 F. Supp. 2d 813, 817 (N.D. Cal. 2006))]; see also Jones v. Bowen, 829 F.2d 524, 526 (9th Cir. 1987). Additionally, plaintiff contends that consultative examinations are "normally required when additional evidence is needed or when there is an 'ambiguity or insufficiency in the evidence [that] must be resolved.'" [JS at 5 (citing Reed, 270 F.3d at 842, 20 C.F.R. §§ 404.1517-404.1519).] Plaintiff also states that he requested assistance in developing this issue because he had limited funds and could not afford to obtain a separate neurological evaluation as recommended by Dr. Bleecker. [Id.]

As a general matter, it is plaintiff's duty to prove he is disabled. Mayes, 276 F.3d at 459; 42 U.S.C. § 423(d)(5)(A) (claimant must furnish medical and other evidence of his disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled"). While plaintiff bears the burden of proving disability, the ALJ in a social security case has an independent, "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted). This duty is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes, 276 F.3d at 459-60.

For instance, in Tonapetyan, although the ALJ "did not specifically find that the evidence of Tonapetyan's mental impairment was ambiguous, or that he lacked sufficient evidence to render

a decision, he relied heavily upon the testimony of the medical expert, Dr. Walter, who found just that." Tonapetyan, 242 F.3d at 1150. In that case, the medical expert found the claimant's psychological record "confusing" and recommended that a more detailed report be obtained. Id. Dr. Walter "found it 'difficult to say' whether the medical record was complete enough to allow the ALJ to reach a conclusion" and "remained equivocal throughout his testimony." Id. The Ninth Circuit held that because the ALJ relied on the expert's testimony, he "was not free to ignore Dr. Walter's equivocations and his concerns over the lack of a complete record," and that the ALJ's failure to obtain a more detailed report constituted reversible error. Id. at 1150-51.

The instant case is virtually indistinguishable from Tonapetyan. Here, Dr. Bleecker recommended a neurological consultative examination, and explicitly stated that based on his objective findings, a neurological evaluation "should" be conducted to "make a more valid determination" of plaintiff's functional capacity. [AR at 267.] Plaintiff pointed out to the ALJ that Dr. Bleecker had recommended that a neurological consultative examination should be ordered "so that [plaintiff] can have a more thorough evaluation and assessment" [AR at 44], and also informed the ALJ that he could not afford to obtain this evaluation on his own. [AR at 256.] However, the ALJ denied plaintiff's request and, although he gave great weight to the opinion of Dr. Bleecker, he never once acknowledged in his decision that Dr. Bleecker had made such a recommendation. Thus, the ALJ's reliance on Dr. Bleecker's opinion was not warranted because -- as even Dr. Bleecker himself recognized -- based on Dr. Bleecker's objective findings of sustained clonus in the right lower extremity, questionable Babinski on the right, and hyperactive reflexes on the right, a neurological evaluation would provide a "more valid determination" of plaintiff's functional capacity. [AR at 267.] More specifically, Dr. Bleecker's "diagnostic impression" orthopedically, based on objective tests administered by Dr. Bleecker that suggested possible neurological involvement, was admittedly potentially less valid without a neurological evaluation and, therefore, his diagnosis and functional capacity assessment was "incomplete." See Hilliard, 442 F. Supp. 2d at 819.

Based on the foregoing, Dr. Bleecker's report was at best ambiguous as to whether plaintiff's impairments include a neurological component and, as admitted by Dr. Bleecker,

9

plaintiff's functional capacity would be more validly determined by conducting a neurological evaluation. Given this ambiguity, the ALJ had a duty to further develop the record by ordering a neurological evaluation.

Remand is warranted on this issue.

**B.    CREDIBILITY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 6-8.]

The ALJ found "a number of reasons for doubting [plaintiff's] allegations." [AR at 14.] First, he noted numerous inconsistencies between the treating reports and the extreme limitations alleged by plaintiff. [Id.] For instance, plaintiff alleged in his Exertional Activity Questionnaire that he cannot climb stairs, lift or carry anything, cannot clean, and can only walk from the house to the mailbox, but also reported in the same Questionnaire that he rides a bike to the bus stop, sweeps, and takes out trash. [Id. (citations omitted).] Plaintiff also admitted that he was able to travel across the country to visit his mother, and reported as late as June 2012 that he "has not been having pain in his hips." [Id. (citations omitted).] That same June 2012 progress note stated that plaintiff ambulates without the use of any assistive device. [Id. (citation omitted).] Second, the ALJ found that plaintiff's "required use of a cane is questionable in light of conflicting treating report notes," some reflecting plaintiff's use of a cane to ambulate, and others stating that he was able to ambulate independently, as well as the fact that a cane had never been prescribed by a treating physician. [Id.] Third, the ALJ considered claimant's work history, which he found raised a question as to whether plaintiff's unemployment since the alleged onset date was actually due to a medical condition, in light of plaintiff's report to a physical therapist in June 2012 that he had no back problems or trauma to his back prior to January 2012, and the lack of medical evidence corresponding with plaintiff's cessation of work activity, suggesting that there may have been non-medical reasons for plaintiff's unemployment. [AR at 15.] Fourth, the ALJ noted that plaintiff's medical treatment had been "essentially routine and/or conservative in nature." [Id.] Although plaintiff had received some physical therapy during a three-month period, he had missed four

sessions, reported improvement in his symptoms, had relied only on over-the-counter pain relievers for the majority of the time between the alleged onset date and the hearing, and had started taking Vicodin only recently. [Id.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Lingenfelter, 504 F.3d at 1036. Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); 20 C.F.R. § 404.1529(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 13-16],[9] the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell, 725 F.3d at 1136 (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, __ F.3d __, 2015 WL 6684997, at *5 (9th Cir. Nov. 3, 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible

---

[9] Defendant argues that there is evidence in the record that plaintiff was malingering and that this evidence, "by itself, was a sufficient reason for the ALJ to reject Plaintiff's subjective complaints." [JS at 8-9 (citations omitted).] However, there is no evidence in the record that any physician suggested or found that plaintiff was malingering or exaggerating his symptoms, nor did the ALJ make an affirmative finding of malingering. Burrell v. Colvin, 725 F.3d 1133, 1136 (9th Cir. 2014).

and what evidence undermines the claimant's complaints." Burrell, 725 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (internal quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 2015 WL 6684997, at *5 (quoting Bunnell, 947 F.2d at 345-46). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Based on the current record, the Court finds that the ALJ's reasons for discounting plaintiff's subjective complaints were sufficiently specific to allow the Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit his subjective symptom testimony. However, in light of the Court's remand for a neurological consultative examination, the ALJ on remand shall reconsider plaintiff's credibility in light of any additional evidence of record that may be obtained.

**C.  DETERMINATION OF PLAINTIFF'S RFC**

Plaintiff contends that the ALJ improperly determined plaintiff's RFC by failing to order a neurological evaluation as suggested by Dr. Bleecker, and by failing to state why he did not include the postural limitations suggested by the State Agency physician, Dr. Resnick, in the RFC determination. Specifically, Dr. Resnick limited plaintiff to light work, and noted that he can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and stoop. [JS at 13 (citing AR at 59, 267).] The ALJ also did not include plaintiff's need to use a cane when standing or walking, although he did find plaintiff's need for the cane to be "questionable." [JS at 14.] Plaintiff also argues that the ALJ's reference to the "illegible phrases," "scribbled notes," and "'questionable' treatment history," of his two treating chiropractors, should have resulted in the ALJ recontacting those doctors. [Id.] He also contends that notwithstanding the ALJ's finding that plaintiff's two chiropractors were not acceptable medical sources, the ALJ still should have given those opinions

12

greater weight and included the additional limitations suggested by them in his RFC assessment. [JS at 15 (citing Soc. Sec. Ruling[10] 05-3p).] Plaintiff observes that while an ALJ is not required to address all evidence presented to him, he must explain why significant and probative evidence was rejected. [JS at 13 (citing Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)).]

Because the matter is being remanded to obtain a neurological consultative examination, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of that examination, the Court declines to address this issue at this time.

**D.   STEP FIVE FINDING**

Plaintiff argues that because he had "multiple nonexertional impairments, including the need to alternate between sitting and standing, the need to use a cane, postural limitations, limitation in ability to maintain attention and concentration, and, the likelihood of being absent from work more than 4 days per month," the ALJ should have obtained testimony from a vocational expert to determine whether plaintiff would be able to perform sustained work in the national economy with those restrictions. [JS at 19.]

Because the matter is being remanded to obtain a neurological consultative examination, and the ALJ's step five finding will rise or fall based on his reconsideration of all of the issues raised by plaintiff herein, the Court declines to address this issue at this time.

/
/
/
/

---

[10] "The Commissioner issues Social Security Rulings [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

## VI.

## <u>REMAND FOR FURTHER PROCEEDINGS</u>

The Court has discretion to remand or reverse and award benefits. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See <u>Lingenfelter</u>, 504 F.3d at 1041; <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See <u>Benecke</u>, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall order a consultative neurological examination. Second, the ALJ shall reassess all of the medical opinion evidence, and must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others, or for rejecting any significant and probative evidence. Third, although based on the current record the ALJ's credibility determination was legally sufficient and based on substantial evidence, the ALJ on remand shall reassess plaintiff's subjective allegations in light of any new evidence obtained and either credit his testimony as true, or again provide specific, clear and convincing reasons, supported by substantial evidence in the record, for discounting or rejecting any testimony. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[11]

---

[11] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.

14

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  November 12, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE